IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SHANNON DAVIS,

                Plaintiff,

v.                                        CIVIL ACTION NO. 2:14-cv-26957

SECOND CHANCE PRE-OWNED
AUTO SALES, LLC, et al.,

                Defendants.

**MEMORANDUM OPINION & ORDER**
(*Motion for Default Judgment*)

    Pending before the court is the plaintiff's Motion for Default Judgment [Docket 29]. For the reasons stated below, this motion is **GRANTED in part** and **DENIED in part**.

    **I.**    **Factual Background**

    In March 2014, the plaintiff, Shannon Davis, visited Second Chance Pre-Owned Auto Sales LLC ("Second Chance"), a used car dealership, where Justin Terwilliger, the dealership's owner, showed her a 1995 Ford Ranger ("vehicle"). (Compl. [Docket 1-1] ¶¶ 5, 8). Ms. Davis alleges that when she pointed out some defects in the vehicle, Mr. Terwilliger assured her that repairs would be made. (*Id.* ¶ 10). The following day, Ms. Davis returned to the dealership to finalize the purchase of the vehicle. (*Id.* ¶ 12). American Credit Acceptance, LLC ("ACA") was the lender and current holder of the obligation in the consumer credit sale. (*Id.* ¶ 4). Ms. Davis signed the Retail Installment Contract and Security Agreement but claims that she never received any other disclosures. (*Id.* ¶¶ 15-16). Shortly after purchase, Ms. Davis alleges the vehicle began experiencing mechanical problems, at which point Second Chance told her to take it to Cross

Lanes Auto for repairs. (*Id.* ¶¶ 23-24). Cross Lanes Auto was unable to repair the vehicle, so Ms. Davis returned to Second Chance. (*Id.* ¶¶ 25-26). Ms. Davis claims that Mr. Terwilliger again assured her that Second Chance would repair the vehicle, yet she was unable to schedule an appointment. (*Id.* ¶¶ 27-30). In late March, Ms. Davis, on her own accord, took the vehicle to Midway Ford, who discovered that the vehicle had a faulty catalytic converter. (*Id.* ¶¶ 31-32). Ms. Davis conveyed this information to Second Chance, and Second Chance allegedly referred Ms. Davis to Quality Exhaust. (*Id.* ¶ 33). Quality Exhaust was able to complete the repairs, but afterwards, Ms. Davis claims that the vehicle continued to experience mechanical problems. (*Id.* ¶ 35).

At this point, Ms. Davis contacted ACA seeking to revoke acceptance of the vehicle, but ACA allegedly refused. (*Id.* ¶ 36). Then, Ms. Davis took the vehicle to Wal-Mart for further diagnostic testing. (*Id.* ¶ 37). Wal-Mart diagnosed numerous problems with the vehicle, prompting Ms. Davis to return to Second Chance and again attempt to revoke acceptance of the vehicle. (*Id.* ¶¶ 37-38). Ms. Davis claims that she and Mr. Terwilliger entered into a written agreement in which he represented that Second Chance would complete all listed necessary repairs at no cost. (*Id.* ¶¶ 39-40). Ms. Davis picked up the vehicle on June 14, 2014, and an inspection revealed that many of the agreed-upon repairs had not been completed. (*Id.* ¶¶ 42-45). She further alleges that the vehicle continued to experience mechanical problems. (*Id.* ¶ 46). On June 4, 2014, Ms. Davis contacted Second Chance about the incomplete repairs, and that Second Chance told her the repairs were no longer covered by her warranty. (*Id.* ¶ 48). Finally on June 27, 2014, when the vehicle's transmission failed, Ms. Davis contacted Second Chance to revoke

acceptance of the vehicle and request that Second Chance come pick it up. (*Id.* ¶ 51). Second Chance never picked up the vehicle. (*Id.* ¶ 52).

The plaintiff filed her complaint in the Circuit Court of Kanawha County, West Virginia, on September 4, 2014, against both Second Chance and ACA advancing the following claims: (1) Violation of Truth-in-Lending; (2) Breach of Implied Warranty; (3) Breach of Written Warranty; (4) Fraud; (5) Unconscionable Means to Collect; (6) Unconscionable Arbitration Clause; and (7) Unconscionable Delegation Provision Within Arbitration Clause. On October 17, 2014, ACA removed the case to this court. (Notice of Removal [Docket 1]). ACA answered the complaint, filed a counterclaim against the plaintiff, and filed a crossclaim against Second Chance on October 20, 2014. (Answer to Compl. [Docket 3]).[1] However, Second Chance has failed to respond to the plaintiff's complaint. Accordingly, on December 10, 2014, the clerk entered default as to Second Chance with regard to the plaintiff's claims pursuant to Rule 55(a). Under Rule 55(b), the plaintiff now moves for the court to enter default judgment against Second Chance.[2]

## II.     Legal Standard

District courts may enter default judgment against a properly served defendant under Federal Rule of Civil Procedure 55. Rule 55(a) provides for entry of default where "a party against whom a judgment or affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). After default is entered by the clerk, a party may move the court for default

---

[1] On March 31, 2015, the plaintiff and ACA entered into an Agreed Dismissal Order, With Prejudice, [Docket 32], which terminated the plaintiff's claims against ACA and ACA's counterclaims against the plaintiff.
[2] Second Chance has also failed to respond to ACA's crossclaim. Therefore, on February 26, 2014, the clerk entered default as to Second Chance with regard to ACA's crossclaim. (Clerk's Entry of Default [Docket 26]). ACA subsequently moved for default judgment, (Mot. for Default J. [Docket 35]), which the court will rule on in a separate order.

3

judgment under Rule 55(b). Indeed, applying to the court for default judgment is necessary where, as here, the plaintiff's claim is not for a sum certain or made certain by computation. Fed. R. Civ. P. 55(b).

Upon default, all of the well-pleaded facts alleged in the complaint as to liability may be taken as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("[T]he defendant, by his default, admits plaintiff's well-pleaded allegations of fact[.]" (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "Although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be liberally exercised, in entering such judgments and in providing relief therefrom." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) (citations omitted). The court, however, must not enter default judgment that "differ[s] in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### III. Discussion

#### a. Truth in Lending Act

First, the plaintiff alleges that Second Chance violated the Truth in Lending Act's ("TILA") disclosure requirement. TILA requires the creditor to disclose nineteen different items for each consumer credit transaction. 15 U.S.C.A. § 1638(a) (West 2014). All but one of these disclosures must be "conspicuously segregated from all other terms," and all must be "delivered or placed in the mail not later than three business days after the creditor receives the consumer's written application, which shall be at least [seven] business days before consummation of the transaction." *Id.* § 1638(b). Ms. Davis attests that she did not receive any disclosures from Second Chance prior to consummation. (Davis Aff. [Docket 29-3] ¶ 4). TILA also provides that

in the case of an individual action, a creditor who fails to comply with the disclosure requirement is liable for twice the amount of any finance charge in connection with the transaction. *Id.* § 1640(a). According to the Retail Installment Contract and Security Agreement [Docket 29-1], the finance charge was $1,456.70. Therefore, Second Chance is liable for twice that amount: $2,913.34. The plaintiff's motion with regard to TILA is **GRANTED**.

### b. Revocation of Acceptance

Next, the plaintiff alleges that Second Chance breached implied warranties in violation of West Virginia's Uniform Commercial Code ("UCC") and written warranties in violation of the Magnuson-Moss Act. The UCC provides that a buyer may revoke acceptance of nonconforming goods—whose nonconformity substantially impairs its value—if acceptance was based on the reasonable assumption that nonconformity would be cured. W. Va. Code § 46-2-608 (West 2014). Ms. Davis attests that she accepted the vehicle based on the assumption that Second Chance would repair its defects, but certain repairs were never completed. (Davis Aff. [Docket 29-3] ¶¶ 6-9). These defects substantially impaired the value of the vehicle because the transmission ultimately failed, leaving Ms. Davis unable to use it. (*Id.* ¶ 15). Therefore, Ms. Davis's revocation of acceptance is valid. Further, a buyer who revokes acceptance may recover "the price as has been paid." W. Va. Code § 46-2-711. Ms. Davis made a down payment of $1,000 and three payments of $185.39. Therefore, Second Chance is liable for the total amount of $1,556.17. The plaintiff's motion with regard to revocation of acceptance is **GRANTED**.

### c. Fraud

Next, the plaintiff alleges that Second Chance engaged in common law fraud by making intentional and material misrepresentations to Ms. Davis with regard to repairing the vehicle's defects.

> The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it.

*Quicken Loans, Inc. v. Brown*, 737 S.E.2d 640, 652-53 (W. Va. 2012) (quoting *Folio v. City of Clarksburg*, 655 S.E.2d 143 (W. Va. 2007)) (internal quotation marks and citations omitted). Ms. Davis attests that Second Chance, specifically through Mr. Terwilliger, engaged in fraud on multiple occasions. For example, on March 26, 2014, Mr. Terwilliger represented to Ms. Davis that Second Chance would make seven agreed upon repairs to the vehicle. (Compl. [Docket 1-1] ¶¶ 39-40). This representation was material and false because certain repairs were never made, resulting in the ultimate failure of the vehicle. Further, Ms. Davis did not revoke acceptance of the vehicle in reliance on Mr. Terwilliger's representation that the vehicle would be repaired. Therefore, I find that the plaintiff has established the requisite elements of a common law fraud action.

The plaintiff also contends that in actions for common law fraud, the plaintiff may recover punitive damages. In *Mayer v. Frobe*, the Supreme Court of Appeals of West Virginia held "where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages[.]" Syl. pt. 4, 22 S.E. 58 (W. Va. 1895). However, the plaintiff has failed to offer evidence of *gross* fraud sufficient to justify awarding punitive damages in this case. The evidence establishes that Second

6

Chance at least attempted to repair some of the vehicle's defects upon Ms. Davis's request by first referring Ms. Davis to Cross Lanes Auto and Quality Exhaust, and then repairing certain defects at the Second Chance dealership. (Compl. [Docket 1-1] ¶¶ 24, 41). Second Chance also provided Ms. Davis with a loaner vehicle to use while her vehicle was being repaired. (*Id.*). Although Second Chance failed to adequately perform all necessary repairs, resulting in the vehicle's ultimate failure, its conduct does not rise to the level of malicious, oppressive, wanton, willful, or reckless. Syl. pt. 4, *Mayer*, 22 S.E. 58. Accordingly, the plaintiff's motion with regard to punitive damages is **DENIED**.

### d. Attorney's Fees

Lastly, the plaintiff argues she is entitled to attorney's fees under TILA. TILA provides that a creditor, in the case of any successful action to enforce the foregoing liability, is liable for the costs of action, together with a reasonable attorney's fee as determined by the court. 15 U.S.C.A. § 1640(a)(3). Plaintiff's counsel, Bren J. Pomponio, has provided an affidavit detailing his time and expenses. (Aff. of Bren J. Pomponio [Docket 29-2]). Upon review, I find his fees—at a rate of $325 per hour—to be reasonable. Therefore, the plaintiff's motion with regard to attorney's fees is **GRANTED**, and Second Chance is liable in the amount of $5,069.57.

## IV. Conclusion

In sum, the court **GRANTS** the plaintiff's Motion for Default Judgment [Docket 29] with regard to TILA, revocation of acceptance, and attorney's fees and **DENIES** the plaintiff's Motion for Default Judgment [Docket 29] with regard to punitive damages.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 7, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE