**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

SHANNON DAVIS,

                Plaintiff,

v.                                    CIVIL ACTION NO.  2:14-cv-26957

SECOND CHANCE PRE-OWNED
AUTO SALES, LLC, et al.,

                Defendants.

**MEMORANDUM OPINION & ORDER**
*(Defendant's Motion for Default Judgment)*

Pending before the court is Defendant American Credit Acceptance, LLC's Motion for Default Judgment Against Second Chance Pre-Owned Auto Sales LLC ("Motion") [Docket 35]. For the reasons discussed below, the Motion is **GRANTED**.

I.      **Background**

This case arises out of a Retail Installment Contract and Security Agreement ("RIC") between the plaintiff, Shannon Davis, and the defendant, Second Chance Pre-Owned Auto Sales LLC ("Second Chance"). On March 14, 2014, Ms. Davis entered into the RIC to finance the purchase of a vehicle. (Compl. [Docket 1-1] ¶ 16). Pursuant to a Dealer Agreement entered into by Second Chance and American Credit Acceptance, LLC ("ACA") in October 2013, (Ex. A, Dealer Agreement [Docket 35-1]), ACA subsequently purchased and took assignment of the RIC for the amount of $2,838.13. (Ex. A, McKibben Aff. [Docket 35-1] ¶ 5). Broadly, the Dealer Agreement provides that Second Chance will "defend, indemnify and hold ACA harmless

against, *inter alia*, all claims arising out of or resulting from Second Chance's breach of the Dealer Agreement, breach of Second Chance's representations and warranties, and any actions of Second Chance in connection with the retail installment contracts sold to ACA." (ACA's Mem. of Law. in Supp. of Its Mot. for Default J. ("ACA's Mem.") [Docket 36], at 2).

Shortly after purchase, the vehicle began experiencing mechanical problems. (Compl. [Docket 1-1] ¶ 23). Over the course of a few months, Second Chance failed to adequately repair the vehicle, resulting in Ms. Davis's ultimate revocation of acceptance. (*Id.* ¶¶ 24–51). At the time of revocation, Ms. Davis had made four of the installment payments due under the RIC in the amount of $750.82. (ACA's Mem. [Docket 36], at 2).

The plaintiff filed her complaint in the Circuit Court of Kanawha County, West Virginia, on September 4, 2014, against both Second Chance and ACA advancing the following claims: (1) Violation of Truth-in-Lending; (2) Breach of Implied Warranty; (3) Breach of Written Warranty; (4) Fraud; (5) Unconscionable Means to Collect; (6) Unconscionable Arbitration Clause; and (7) Unconscionable Delegation Provision Within Arbitration Clause. On October 17, 2014, ACA removed the case to this court. (Notice of Removal [Docket 1]). Upon receipt of the plaintiff's Complaint, ACA sent Second Chance a letter demanding Second Chance repurchase the RIC pursuant to the terms of the Dealer Agreement. (Ex. A, McKibben Aff. [Docket 35-1] ¶ 7). After speaking with Second Chance's manager, but never hearing back from counsel, ACA sent another letter demanding that Second Chance indemnify and defend ACA against the plaintiff's claims. (Ex. B, Hovatter Aff. [Docket 35-2] ¶¶ 3–4). Second Chance never responded to these demands.

On October 20, 2014, ACA answered the complaint, filed a counterclaim against the plaintiff, and filed a crossclaim against Second Chance. (Answer to Compl. [Docket 4]). The crossclaim includes the following counts: (1) contractual indemnification; (2) indemnification and contribution; (3) breach of contract; and (4) unjust enrichment. (*Id.* at 17–21). Second Chance failed to respond to the plaintiff's complaint and ACA's crossclaim. Accordingly, the clerk entered default as to Second Chance pursuant to Federal Rule of Civil Procedure 55(a) with regard to the plaintiff's claims on December 10, 2014, (Clerk's Entry of Default [Docket 13]), and with regard to ACA's crossclaim on February 26, 2015, (Clerk's Entry of Default [Docket 26]). On May 7, 2015, upon the plaintiff's motion, I entered judgment in favor of the plaintiff against Second Chance. (J. Order [Docket 38]; *see also* Mem. Op. & Order [Docket 37] (granting in part and denying in part plaintiff's Motion for Default Judgment pursuant to Rule 55(b))).

Independent of Second Chance, the plaintiff and ACA reached a settlement agreement, pursuant to which ACA agreed to pay the plaintiff $8,800 and forgive the balance due on the RIC. (ACA's Mem. [Docket 36], at 4; *see also* Agreed Dismissal Order with Prejudice [Docket 32]). The plaintiff also relinquished all rights to the vehicle, allowing ACA to sell it at an auction and receive net proceeds of $295.00. (ACA's Mem. [Docket 36], at 4). Presently, under Rule 55(b), ACA moves for the court to enter default judgment against Second Chance on ACA's crossclaims.

## II.    Legal Standard

District courts may enter default judgment against a properly served defendant under Federal Rule of Civil Procedure 55. Rule 55(a) provides for entry of default where "a party

against whom a judgment or affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). After default is entered by the clerk, a party may move the court for default judgment under Rule 55(b). Indeed, applying to the court for default judgment is necessary where, as here, the plaintiff's claim is not for a sum certain or made certain by computation. Fed. R. Civ. P. 55(b).

Upon default, all of the well-pleaded facts alleged in the complaint as to liability may be taken as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("[T]he defendant, by his default, admits plaintiff's well-pleaded allegations of fact[.]" (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975))). "Although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be liberally exercised, in entering such judgments and in providing relief therefrom." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) (citations omitted). The court, however, must not enter default judgment that "differ[s] in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III.   Analysis

ACA seeks judgment in the total amount of $30,837.20, which includes: (1) $8,800.00 for the cost of settlement with the plaintiff; (2) $2,087.31 for the amount ACA paid to purchase the RIC from Second Chance, less payments made by the plaintiff; (3) $20,244.89 in attorney's fees and costs; and (4) a credit for $295.00 for the net sale proceeds ACA received for the sale of the vehicle. (ACA's Mem. [Docket 36], at 5).[1]

---

[1] ACA employee, Katherine McKibben, attests that ACA sold the plaintiff's vehicle at an auction for the price of $295.00, and ACA has attached the relevant Sale Contract. (Ex. A, McKibben Aff. Docket 35-1] ¶ 10; Ex. A-5, Sale Contract [Docket 35-1]). Therefore, I find it unnecessary to address this "credit" in my analysis.

### A.  Cost of Settlement

The Dealer Agreement specifically states that the dealer (Second Chance)

> shall defend, indemnify, and hold Finance Company [ACA] harmless from and against any and all, claims, losses, liabilities, damages, injuries, costs, expenses, outside attorneys' fees, courts costs and other amounts arising out of or resulting from . . . any actions of Dealer in connection with the Credit Applications and Contracts sold by it under this Agreement.

(Ex. A, Dealer Agreement [Docket 35-1], at 13). The plaintiff contended that ACA violated W. Va. Code § 46A-2-128 because it knew or should have known that no debt was owed as a result of Second Chance's conduct. (Compl. [Docket 1-1] ¶ 73). Accordingly, her claims against ACA arose out of the "actions of [Second Chance]." (Ex. A, Dealer Agreement [Docket 35-1], at 13). In March 2015, ACA reached a settlement agreement with the plaintiff on its own. (Ex. A, McKibben Aff. [Docket 35-1] ¶ 9; *see also* Ex. B, Hovatter Aff. [Docket 35-2] ¶¶ 4–5 (attesting that ACA sent letters to Second Chance demanding indemnification and inviting Second Chance to participate in settlement negotiations with the plaintiff, but received no response)). Pursuant to this agreement, ACA paid the plaintiff $8,800 and forgave the balance due on the RIC. (*Id.*). Accordingly, Second Chance is obligated to indemnify ACA for the cost of settlement in the amount of $8,800. (Ex. A, Dealer Agreement [Docket 35-1], at 13). ACA's Motion with regard to the cost of settlement is **GRANTED**.

### B.  Contract Price

The Dealer Agreement provides:

> In the event that Dealer breaches a representation, warranty or covenant contained in Section 9 with respect to a Contract, Dealer shall, if required and demanded by Finance Company (i) repurchase such Contract from Finance Company and (ii) reimburse Finance Company for any fees and costs suffered by Finance Company as a result of such breach.

(*Id.* at 12). Section 9 requires that the dealer "fully satisf[y] any and all warranties, expressed or implied, if any, made to the Buyer relative to the purchase of the Vehicle and Additional Products." (*Id.* at 8). Therefore, when Second Chance breached its warranties to the plaintiff, ACA was authorized to give notice and demand the repurchase of the RIC. Upon receipt of the plaintiff's Complaint, ACA sent Second Chance a letter demanding repurchase of the RIC pursuant to the terms of the Dealer Agreement. (Ex. A, McKibben Aff. [Docket 35-1] ¶ 7). Second Chance never responded to ACA's demand. (*Id.*). Accordingly, Second Chance is obligated to reimburse ACA for the cost of purchasing the RIC ($2838.13), less the amount the plaintiff paid under the RIC ($750.82), for a total amount of $2,087.31. ACA's Motion with regard to the contract price is **GRANTED**.

### C.  Attorney's Fees

The Dealer Agreement specifically includes indemnification for attorney's fees, as well as reimbursement for fees and costs associated with the dealer's breach. (Ex. A, Dealer Agreement [Docket 35-1], at 12–13). ACA's counsel, Debra Lee Hovatter, has provided an affidavit detailing the firm of Spilman Thomas & Battle, PLLC's time and expenses. (Ex. B, Hovatter Aff. [Docket 35-2]). Upon review, I find the firm's fees and costs to be reasonable. Therefore, ACA's motion with regard to attorney's fees is **GRANTED**, and Second Chance is liable in the amount of $20,244.89.

### IV.    Conclusion

For the reasons discussed above, ACA's Motion [Docket 35] is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        August 5, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE